JUAN AND AURORA RUIZ, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Ruiz v. Commissioner
Docket No. 7530-81.
United States Tax Court
T.C. Memo 1984-213; 1984 Tax Ct. Memo LEXIS 451; 47 T.C.M. (CCH) 1657; T.C.M. (RIA) 84213; April 25, 1984. Juan Ruiz, pro se. James Michael Chitwood, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax under sections 6651(a) [1] and 6653(a) as follows: Addition to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1978
$1,433.70
$71.68
$71.68
1979
3,173.90
158.69
*452 The issues for decision are: 1. Whether petitioners underreported their gross income from the operation of a restaurant; 2. Whether petitioners are entitled to deduct interest expenses in excess of the amounts allowed by respondent; 3. Whether petitioners are entitled to deduct rental expenses in excess of the amounts allowed by respondent; 4. Whether petitioners are entitled to claim extra deductions for the expense of employing musicians to perform at their restaurants; 5. Whether the late filing of petitioners' tax return for 1978 was due to reasonable cause; and 6. Whether any underpayment of petitioners' tax for 1978 or 1979 was due to negligence or intentional disregard of rules and regulations. We shall first state the general facts and then combine our findings of fact and opinion with respect to each issue. General
Petitioners filed joint Federal income tax returns for the years in issue with the Internal Revenue Service Center, Ogden, Utah. At the time their petition in this case was filed, they resided in Woodburn, Oregon. All references to "petitioner" in the singular are to petitioner Juan Ruiz. 1. Restaurant Receipts
Petitioner *453 owned three restaurants, each named El Acapulco, located in Oregon in the Cities of Hubbard, Salem, and Portland. Petitioner had either sold or leased the Hubbard restaurant to another individual prior to the period in question but repossessed the property in early January 1978. The restaurant was closed during the remainder of January and February 1978; petitioner re-opened the restaurant under his own operation around March 1, 1978. During the period in which the restaurant was closed, petitioner reapplied for his liquor license, cleaned up the property, and did some remodeling. On his tax return for 1978, petitioner reported no income from the Hubbard restaurant for the months of January and February.
The gas and electricity were on at the Hubbard restaurant during the 2 months in 1978 that it was closed. The gas bills were $271.66 for January and $260.48 for February. The bill for March, when it is agreed that the restaurant was open for business, was $206. The account with the electric company was opened on January 6, 1978. The electric bill for January usage was $215.02; the bill for February usage was $189.18. The restaurant's telephone bill, dated January 11, 1978, was *454 for $141.35; the bill dated February 11, 1978, was for $67.85. Based on the gas, electricity, and telephone usage during the months of January and February, and on the fact that petitioner had made some purchases for the restaurant during those months, [2] respondent concluded that the restaurant had been open during January and February and that petitioner had failed to report his receipts for those months. Respondent determined that the amount of the unreported receipts was $19,316. He arrived at this figure by taking the average monthly receipts reported for the months March through December 1978 and multiplying by two. The income respondent has ascribed to the Hubbard restaurant is not based on evidence such as bank deposits or demonstrated increases in petitioner's net worth. The only foundation upon which it rests is respondent's conclusion that, contrary to petitioner's statement, the restaurant was open during the months of January and February 1978.We are convinced by petitioner's credible testimony and that of one of *455 his employees that the restaurant was closed during those months. The gas, electric, and telephone bills do not convince us otherwise. Petitioner does not maintain that no one entered the premises during the months in question, but merely that the restaurant was not open for business. The gas, electricity, and telephone use reflected in the bills is not inconsistent with petitioner's statement that he was in the restaurant cleaning and remodeling during that period. Accordingly, we hold for petitioner with respect to this issue. 2. Interest Expense
Some of the furniture and fixtures in petitioner's restaurants were purchased from the CIT Corporation (CIT). Under one contract of sale dated June 26, 1973, petitioner agreed to pay CIT $54,619.20 in 48 equal monthly payments of $1,137.90. Under a second contract dated June 1, 1976, petitioner agreed to pay CIT $128,013 in 60 equal monthly payments of $2,133.55. Each contract provided that: Interest before maturity shall be payable monthly on unpaid balances at the rate of 0 percent per annum and after maturity at 1-1/2 percent per month if not prohibited by law, otherwise at the highest lawful contract rate. A statement *456 attached to the 1976 contract indicated that the total payments of $128,013 included "carrying charges" of $34,912.67. A similar statement attached to the 1973 contract indicated that it included "carrying charges" of $11,657.44. [3]
At some time during the payment period provided for in these contracts, petitioner fell behind in the payments, and he and CIT agreed to extend the payment periods. Thus, although the 1973 contract provided for payments over a 4-year period, and, therefore, should have been paid up in 1977, petitioner was still making payments on it during at least part of the years in issue.
In his tax returns *457 for 1978 and 1979, petitioner deducted $18,752 and $9,037, respectively, as the interest expense reflected in his payments under the two CIT contracts. The method by which the portion of each year's total payments which constituted interest was determined was described by petitioner's tax return preparer in his testimony as follows: Now, on the contract, which you have entered there, is a figure stated as a total amount of interest on the C.I.T. contract for the length of the contract. So, we've merely taken that total interest and divided it up among the years for which it should apply. So, then, as he makes his payments over the years, part of that payment is interest and part of it's principal until the total is paid off. The "figure stated as a total amount of interest" to which the preparer referred is apparently, in each case, the carrying charge listed in the statement attached to the contract. The record does not reveal the total amount of payments made by petitioner under the two contracts during the years in issue, or the basis for depreciation claimed by petitioner in the equipment purchased under the contracts. Respondent denied the deductions claimed *458 for interest paid under the two CIT contracts in their entirety, and now argues that petitioner has failed to establish the amount of payments made or that any part of those payments constituted interest expense.
As noted above, the record fails to establish the exact amount of payments made under the two sales contracts during the years in issue. Nevertheless, we are convinced by his testimony that petitioner made some payments. We are also convinced that some part of those payments represented interest expense. Respondent's argument to the contrary amounts to an assertion that, in an arm's-length transaction, money was, in effect, loaned by a commercial loan company interest-free. This argument is patently unrealistic. Respondent's argument is also at odds with section 163(b), which provides that, when personal property is purchased under a contract calling for installment payments, and carrying charges are separately stated but the interest rate cannot be determined, payments made under the contract shall be treated as if they included interest equal to 6 percent of the average unpaid balance under the contract during the taxable year. No precise computation under section *459 163(b) can be made in this case, because the record does not reveal the amount of payments made during the years in question, or the outstanding contract balances at any point during those years. Using our best judgment on the basis of the record before us, we hold that petitioner made payments under the two CIT contracts which consisted of interest to the extent of $4,000 in 1978 and $2,000 in 1979. [4]. The record indicates that these amounts are within the section 163(b) limitations. 3. Rent Expense
In his *460 return for 1978 and 1979 petitioner deducted rental expenses with respect to his restaurants in the amounts of $43,320 and $53,520, respectively. Respondent allowed these deductions only to the extent of $37,978 for each year, having concluded that petitioner had failed to substantiate rental expenses in any greater amounts. Petitioner introduced no evidence concerning this issue. Accordingly, we sustain respondent's determination. 4. Wages Expense - Musicians
Petitioner employed various musicians to perform at his restaurants on weekends during the years in issue.The musicians were paid in cash each evening out of that evening's receipts. The amount of receipts left over after the musicians had been paid was the figure used to compute gross receipts for petitioner's tax returns. Petitioners paid the musicians an average of $340 per week in each of his three restaurants, or over $50,000 per year, even allowing for the 2 months in 1978 that the Hubbard restaurant was closed. Petitioner argues that he is entitled to additional deductions for the years in issue for the expense of employing musicians, which, he maintains, he has not previously claimed in his returns. *461 We do not agree. While petitioner did not identify these expenses for what they were in his returns, he has already had the full tax benefit of them by deducting them directly from gross receipts. He is not entitled to any further deduction with regard to them. 5. Addition to Tax - Section 6651(a)
Petitioner's return for 1978 was filed late and respondent imposed an addition to tax under section 6651(a). That section does not apply if it is shown that the failure to file timely was "due to reasonable cause and not due to willful neglect." Sec. 6651(a)(1). The only explanation petitioner could give for the late filing was that, when he was given the completed return by his preparer, he put it in his briefcase and forgot about it. This does not constitute reasonable cause. Accordingly, we sustain respondent's determination in this regard. 6. Addition to Tax - Section 6653(a)
Each month, petitioner turned his records of income and expenses over to a professional bookkeeper/tax return preparer, who used them to prepare income statements and tax returns for petitioner. The information supplied was accurate to the best of petitioner's knowledge. Respondent determined *462 that petitioners were liable for additions to tax under section 6653(a) for each of the years in issue. That section, as in effect for the years in question, applies when part of an underpayment is "due to negligence or intentional disregard of rules and regulations." Sec. 6653(a). Petitioners have the burden of proof with respect to this issue. . Respondent's determination that petitioner was negligent is based on his conclusion that petitioner understated the receipts of his restaurant business and overstated his expenses of interest and rent; there is no positive evidence of negligence or intentional disregard of the law.We have held for petitioner on the substantive issue of the allegedly understated receipts, which removes it from consideration as a possible source of support for respondent's determination of negligence. With regard to the interest and rent expense issues we have largely sustained respondent's determinations because petitioner did not substantiate the amounts claimed. Our holding that petitioner has failed to substantiate all of the claimed deductions does not, however, require us to conclude that *463 they were negligent or intentionally disregarded rules and regulations. , affd. per curiam and remanded for recomputation . Petitioner maintained records to the best of his ability, which he then entrusted to a professional bookkeeping service to provide the basis for his returns. As to the interest issue, the carrying charge provisions supplemented by the interest provisions in the CIT contracts required the application of a fairly obscure provision of the Code, section 163(b). In the light of the record as a whole, we find that petitioners were not negligent and did not intentionally disregard rules and regulations, and hold that they are not liable for the addition to tax under section 6653(a) for either of the years in issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The record does not reveal what the items purchased were, or whether they were perishable or nonperishable, or the amount of the purchases.↩
3. The terms indicated in the statement attached to the 1973 contract are slightly different from those provided for in the contract itself. Total payments provided for in the attached statement are $50,514.72; in the body of the contract they are $54,619.20. Under the attached statement, payments are to commence May 20, 1974; under the contract itself, they are to commence Aug. 15, 1973. Perhaps the attached statement reflects the terms of the renegotiation of the 1973 contract referred to in the text above, but this is not made clear in the record.↩
4. We reach this conclusion with some reservations, because as noted in text above, the record does not reveal the basis for depreciation claimed by petitioner with respect to the equipment purchased under the two CIT contracts. If, consistent with the "0 percent" interest provided for on the face of the contracts, petitioner claimed the total amount of the payments as his basis for depreciation, our holding that part of those payments constituted deductible interest would grant petitioner a double benefit. Respondent, however, has not accused petitioner of any inconsistency in this regard.↩